UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOSE CARRASCO,

              Plaintiff,

v.

ACTING COMMISSIONER ANTHONY
ANNUCCI and SUPERINTENDENT THOMAS
GRIFFIN,

              Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

17 CV 9643 (VB)

Briccetti, J.:

    Plaintiff Jose Carrasco, proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983 against defendants Acting Commissioner ("Comm'r") Anthony Annucci and Superintendent ("Supt.") Thomas Griffin. Plaintiff alleges defendants violated his Eighth Amendment rights by failing to protect him from being stabbed by another inmate.[1]

    Now pending is defendants' motion to dismiss the second amended complaint ("SAC") pursuant to Rule 12(b)(6). (Doc. #57).

    For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

    For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the SAC and draws all reasonable inferences in plaintiff's favor, as summarized below.

---

[1] Plaintiff originally brought this claim and others against Acting Comm'r Annucci, Supt. Griffin, and several other defendants. The Court dismissed those claims and granted plaintiff leave to amend his complaint as to his Eighth Amendment failure to protect claim only. (Doc. #48); see Carrasco v. Annucci, 2019 WL 4413165, at *6 (S.D.N.Y. Sept. 16, 2019). Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

1

At all relevant times, plaintiff was a convicted inmate at Green Haven Correctional Facility ("Green Haven") in Stormville, New York.

I.      October 6, 2015, Assault

Plaintiff alleges that on or about October 6, 2015, he was standing in line to use the telephone in the E & F yard when he was "physically attacked by unknown inmate(s)." (Doc. #52 ("SAC") ¶ 5). Plaintiff alleges he was stabbed with a sharp, plexiglass-plastic shank in the head, face, chest, back, and stomach. According to plaintiff, the shank was made in the yard from a broken sign attached to the telephones in the yard. Plaintiff further alleges non-party Correctional Officer ("C.O.") Ernst called for assistance from a security response team and ordered plaintiff and his assailant to stop fighting. Plaintiff claims he was examined and treated by Green Haven medical staff and that photographs were taken of his injuries. Plaintiff further claims he suffered a left eye orbital fracture; abrasions on his head, neck, and shoulders; wounds to his chest, arm, and ribs; took medication; and underwent physical and mental health therapy.

According to plaintiff, lack of adequate security measures "created an atmosphere for such violence" in the E & F yard. (SAC ¶ 21). For example, he alleges that at the time of the incident, C.O. Ernst was the only officer in the E & F yard. He also alleges that although there are guard posts around the E & F yard, including one specifically in the telephone area of the E & F yard, all such posts were unoccupied at the time of the attack.

In addition, plaintiff alleges three unidentified corrections officers were assigned to be on duty in the E & F yard on October 6, 2015. According to plaintiff, had these guards been at their posts, they could have helped stop the attack, or would have noticed an inmate making a weapon from the broken sign. Plaintiff also asserts the E & F yard is not, but should be, equipped with a security camera, which would have recorded his assailant removing plastic from the sign.

2

Plaintiff alleges Supt. Griffin is responsible for the policy and procedures enforced at Green Haven, including those used to safeguard inmates and staff members. Plaintiff further alleges Griffin had knowledge of "numerous violent acts occurring in the E & F yard" based on Griffin's weekly review of an "unusual incident log." (SAC ¶ 23). According to plaintiff, the unusual incident log documents all incidents that occur at Green Haven, including inmate-on-inmate attacks in the E & F yard.

According to plaintiff, Supt. Griffin failed to "ensure that his staff examine and report deficiencies, area[s] of concern or possible problems found within [their] own assigned areas." (SAC ¶ 25). According to plaintiff, Griffin's failure to ensure that guards were present at their assigned posts near the E & F yard and to conduct routine assessments of guarded areas, including the telephone area, allowed plaintiff to be attacked. Plaintiff further claims "even the most cursory review" of the telephone area in the E & F yard would have established the broken sign as a "cause of concern." (Id. at ¶ 26).

Plaintiff alleges Acting Comm'r Annucci is responsible for overseeing all New York State correctional facilities and discussing new security measures with staff. According to plaintiff, although Annucci also had knowledge of numerous attacks in the E & F yard at Green Haven, he failed both to evaluate the safety protocols at Green Haven and to discuss with Supt. Griffin updating security measures. Specifically, plaintiff claims Annucci "failed to ensure that this infamous and dangerous prison had enough staff assigned and the proper security such as cameras, metal detectors and proper staffing in all high danger areas." (SAC ¶ 33).

Finally, plaintiff asserts his assailant had a history of attacking other inmates with weapons and that although Supt. Griffin and Acting Comm'r Annucci had knowledge of the

3

assailant's violent history, they "allowed him to continue to commit these violent acts." (SAC ¶ 35).

II. Affidavits

To support his allegations, plaintiff attaches to the SAC affidavits from two other Green Haven inmates, detailing other inmate-on-inmate attacks involving weapons at Green Haven, which allegedly transpired due to the absence of a sufficient amount of guards on duty or metal detectors in Green Haven's yards.[2]

**DISCUSSION**

I. Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544,

---

[2] A court assessing a Rule 12(b)(6) motion may consider, among other things, "documents attached to the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

4

564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.     Failure to Protect Claim

Defendants argue plaintiff fails plausibly to state a claim for failure to protect him against an assault by another inmate.

The Court agrees as to the failure to protect claim against Acting Comm'r Annucci but disagrees as to the claim against Supt. Griffin.

A.      Applicable Law

The Eighth Amendment requires that prison officials take reasonable measures to ensure inmates' safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994). A failure to protect claim thus arises when prison officials act "with deliberate indifference to the safety of the inmate." Hayes v. N.Y.C. Dep't of Corrs., 84 F.3d 614, 620 (2d Cir. 1996). When brought by a convicted

inmate, such a claim is analyzed under the Eighth Amendment and must satisfy two prongs: an objective prong and a mens rea prong.  See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).

To plead the objective prong, a plaintiff must plausibly allege "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process."  Darnell v. Pineiro, 849 F.3d at 29.  This occurs when "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to [the plaintiff's] health."  Id. at 30.  In this context, "[t]here is no static test to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency."  Id.

Under certain circumstances, a correction officer's failure to be present at the time of an attack, or failure to abide by prison safety protocols, may create a condition that poses a substantial risk of serious harm.  See, e.g., Fernandez v. N.Y.C. Dep't of Corr., 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010) (inferring substantial risk of harm because guard's presence at location of attack might have prevented attack); Rennalls v. Alfredo, 2015 WL 5730332, at *4 (S.D.N.Y. Sept. 30, 2015) (assuming substantial risk of harm from defendant's failure to comply with jail clean-up protocol leading to an inmate-on-inmate attack).

To adequately plead the mens rea prong, a plaintiff must plausibly allege the defendant knew of a substantial risk of serious harm to the inmate and disregarded that harm by failing to take reasonable measures to abate it.  Hayes v. N.Y.C. Dep't of Corrs., 84 F.3d at 620.  The defendant officer "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Cuoco v. Moritsugu, 222 F.3d 99, 107 (2d Cir. 2000).  Importantly, "[m]ere negligence by a prison officer

does not establish a claim for deliberate indifference to [a] prisoner's safety." Fernandez v. N.Y.C. Dep't of Corr., 2010 WL 1222017, at *4.

In general, "[a] plaintiff must allege that the defendants knew of a prior altercation between the plaintiff and his attacker, or of threats that had been made against the plaintiff." Morgan v. City of New York, 2014 WL 3952917, at *3 (S.D.N.Y. Aug. 12, 2014). "Courts routinely deny deliberate indifference claims based upon surprise attacks." Fernandez v. N.Y.C. Dep't of Corr., 2010 WL 1222017, at *4.

Alternatively, a plaintiff may state a claim based on "a failure to protect him against a general risk of harm to all inmates at the facility." Parris v. N.Y. State Dep't Corr. Servs., 947 F. Supp. 2d 354, 363 (S.D.N.Y. May 23, 2013). "To do so, a plaintiff must allege that the defendants knew of a history of prior inmate-on-inmate attacks similar to the one suffered by the plaintiff and that the measures they should have taken in response to such prior attacks would have prevented the attack on the plaintiff." Id. "This generally requires a plaintiff to establish a longstanding, pervasive, well-documented history of similar attacks, coupled with circumstances suggesting that the defendant-official being sued had been exposed to this information." Constant v. Prack, 2019 WL 3287818, at *7 (S.D.N.Y. July 19, 2019).

  B. <u>Application</u>

    1. <u>Objective Prong</u>

Plaintiff plausibly alleges the challenged conditions in Green Haven's E & F yard posed an unreasonable risk to his safety. Indeed, he alleges he was the victim of a violent attack by another inmate with a weapon that resulted in injuries to his head, face, chest, back, and stomach.

Moreover, plaintiff plausibly alleges Supt. Griffin was responsible for placing a sufficient amount of guards on duty in the E & F yard, including near the telephone area, to prevent inmate

attacks and violence.  However, at the time of the attack, C.O. Ernst was allegedly the only guard on duty in the E & F yard.  Plaintiff also alleges that the shank used during the attack was made from the plexiglass-plastic of a sign on the yard telephones, and that had there been additional guards on duty, they might have prevented or deterred the assailant from making the shank.

For the reasons set forth above, "[t]he Court is willing to assume, given the early stage in this Action, Plaintiff has plausibly alleged that [Supt. Griffin's] [inaction] may have put Plaintiff at a substantial risk of serious harm."  See Rennalls v. Alfredo, 2015 WL 5730332, at *4; see also Fernandez v. N.Y.C. Dep't of Corr., 2010 WL 1222017, at *4 (inferring substantial risk of harm because guard's presence at location of attack may have prevented attack).  Accordingly, plaintiff plausibly alleges the objective prong.

### 2. Mens Rea Prong

Plaintiff does not allege either defendant "knew of a prior altercation between the plaintiff and his attacker, or of threats that had been made against the plaintiff."  Morgan v. City of New York, 2014 WL 3952917, at *3.  Instead, plaintiff alleges a history of serious inmate-on-inmate assaults in the E & F yard and, more generally, at Green Haven; that defendants knew of such history; and that prior assaults were similar enough to the attack he suffered that remedial actions would have prevented his attack and injuries.  Accordingly, the Court next examines whether plaintiff plausibly alleges the mens rea prong of the failure to protect claim based upon general risk of harm to all inmates at the facility.

#### a. Supt. Griffin

Here, plaintiff alleges Supt. Griffin exhibited deliberate indifference by failing to take action despite knowing of "numerous violent acts occurring in the E & F block yard."  (SAC ¶

23).³  The SAC is sparse with respect to specific allegations about the details of the "numerous violent acts occurring in the E & F block yard."  (Id.) (emphasis added).  However, to suggest a "history of similar attacks," plaintiff submits an affidavit by another inmate who was also attacked near the telephone area of the E & F yard when only one guard was on duty, and the guard post overseeing the telephone area was unoccupied.⁴  See Constant v. Prack, 2019 WL 3287818, at *7.

Although that other incident occurred almost three years prior to the assault on plaintiff, the affidavit asserts that at that time, prison officials told the attesting inmate that attacks similar to his own are a "regular occur[e]nce," and joked "you['re] lucky this wasn't wors[e]."  (SAC at ECF 15).⁵  The attesting inmate further stated that with respect to attacks in the E & F yard, it is difficult to identify attackers due to the high number of prisoners in the yard, inadequate lighting, staff "refusal" to monitor the telephone area, and lack of a metal detector.  (Id.).

While true that plaintiff thus offers only one example of a prior, similar attack, plaintiff plausibly suggests that reports of this attack and others would appear in the unusual incident log that Supt. Griffin regularly reviews.  Therefore, plaintiff plausibly alleges the log—which Griffin allegedly reviewed weekly—contains reports of similar attacks sufficient to suggest Griffin had

---

³ Because plaintiff makes plausible allegations about Supt. Griffin's role in overseeing prison policies and procedures and that he would have known of inmate-on-inmate attacks in the E & F yard based on his review of the unusual incident log, the Court will not dismiss the claim against Supt. Griffin for lack of personal involvement.

⁴ The second affidavit plaintiff offers concerns an attack that occurred after plaintiff's assault, in a different yard at Green Haven, and, therefore, does not support plaintiff's contention that there was a "history of similar attacks, coupled with circumstances suggesting that the defendant-official being sued had been exposed to this information."  Constant v. Prack, 2019 WL 3287818, at *7.

⁵ "ECF __" refers to the page numbers automatically assigned by the Court's Electronic Case Filing system, which will be used herein.

knowledge of a general risk of harm to inmates in the E & F yard.  In other words, plaintiff plausibly alleges Griffin knew of "a longstanding, pervasive, well-documented history of similar attacks" and had "circumstance[] . . . [to be] exposed to this information."  Constant v. Prack, 2019 WL 3287818, at *7.

Moreover, plaintiff alleges that despite this knowledge, Supt. Griffin neither placed sufficient guards on duty in the E & F yard, including specifically near the telephone area, nor took measures to monitor the yard for materials that may be used to fashion weapons.  Thus, plaintiff plausibly alleges "measures [Griffin] should have taken in response to such prior attacks [that] would have prevented the attack on the plaintiff."  Parris v. N.Y. State Dep't Corr. Servs., 947 F. Supp. 2d at 363.

Given the liberal standard afforded to pro se plaintiffs in Section 1983 actions and the early stage of this proceeding, plaintiff plausibly alleges Supt. Griffin was aware of a general risk of harm to inmates at Green Haven, specifically in the telephone area of the E & F yard, and failed to take reasonable measures to prevent such attacks.

Accordingly, plaintiff's failure to protect claim against Supt. Griffin may proceed.

                b.       Acting Comm'r Annucci

Plaintiff alleges Acting Comm'r Annucci had knowledge of numerous attacks in the E & F yard at Green Haven, including specific attacks by plaintiff's assailant, but fails to allege how, or why, Annucci had such knowledge.  Such conclusory allegations are insufficient to plead Annucci was deliberately indifferent in failing to protect plaintiff against a general risk of harm at Green Haven.

Accordingly, plaintiff's failure to protect claim against Acting Comm'r Annucci must be dismissed.

**CONCLUSION**

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

The Clerk is instructed to terminate the motion (Doc. #57) and terminate defendant Acting Comm'r Annucci.

By September 9, 2020, Supt. Griffin shall file an answer to the SAC.

By separate Order, the Court will schedule an initial conference.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: August 26, 2020
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge